## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **JEREMY JOHNSON, et al.,** <br><br> **Defendants.** | **MEMORANDUM DECISION AND ORDER** <br><br> **2:11-CR-501 DN** <br><br> **Chief District Judge David Nuffer** <br><br> **Magistrate Judge Paul M. Warner** |

Chief District Judge David Nuffer referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1]  Before the court is Wells Fargo Bank, N.A.'s Motion to Quash or Modify Subpoena Duces Tecum[2] issued by Defendant Scott Leavitt.

Mr. Leavitt seeks the production of four broad categories of documents:

1.  All communications from November 2008 to end of December 2010 related to IWorks, Inc., between and among Wells Fargo Bank and any of the following: CardFlex, Inc., Blaze Processing, LLC, Mach 1 Merchanting, LLC, or IWorks, Inc.

2.  All records relating to the establishment of merchant accounts for IWorks, Inc., or related entities, from May 2009 to end of December 2010.

3.  All communications with the Federal Trade Commission and United States Department of Justice and Internal Revenue Service, from 2010 to the present, regarding IWorks, Inc. or related entities.

---

[1] *See* docket no. 136.

[2] *See* docket no. 963.

    4.       Contracts and agreements, if any, in effect during the time period of November 2008 to December 2010, between:

        a.      Wells Fargo Bank and First Data, Inc.
        b.      Wells Fargo Bank and CardFlex, Inc.
        c.      Wells Fargo Bank and Blaze Processing
        d.      Wells Fargo Bank and Mach 1 Merchanting.[3]

The subpoena defines iWorks as "iWorks, Inc.," "Jeremy Johnson," "any employees of iWorks," and 21 various entities related to iWorks. The parties conducted two meet and confer conferences in an attempt to narrow the scope of the subpoena without court intervention. After those discussions failed, Wells Fargo filed the instant motion.

Wells Fargo argues that this court should quash the subpoena on the grounds that it is unreasonable and oppressive. Specifically, Wells Fargo contends that the subpoena (1) seeks documents that are not relevant or admissible, (2) is overbroad, (3) is not limited to a reasonable time period, (4) requests information that is available from other sources, and (5) requires Wells Fargo to divulge proprietary and confidential information.

Federal Rule of Criminal Procedure 17(c) provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates" but also allows the court to "quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(1), (2). A party seeking a subpoena duces tecum under Rule 17(c) must establish:

(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of

---

[3] Docket no. 963, Exhibit 1.

trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974).  In order to meet this burden, Mr. Leavitt "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  *Id.* at 700.

Mr. Leavitt argues that the *Nixon* test set forth above should not apply; instead, he urges this court to adopt the less-stringent standard in *United States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D. N.Y. 2000).  Mr. Leavitt states that he is "unaware of any case in which the Tenth Circuit has been asked to consider whether the *Nixon* standard should apply to a defense subpoena issued to a third-party."[4]  The *Nixon* test, however, has been applied by the Tenth Circuit, as well by other judges in this district.  *See United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006); *United States v. Allums*, No. 2:08-cr-30, 2009 WL 412706, *1 (D. Utah Feb. 18, 2009); *United States v. Lansing*, No. 2:08-cr-558, 2009 WL 321575, *1 (D. Utah Feb. 9, 2009); *United States v. Hatathle*, No. 2:07-cr-814, 2008 WL 2640710, *1 (D. Utah July 1, 2008).  Accordingly, this court likewise applies the *Nixon* standard for determining whether to quash the subpoena.

The documents Mr. Leavitt seeks are neither relevant nor admissible.  Specifically, Judge Nuffer granted the Government's Motion in Limine to Preclude Defendant's Presentation of No Loss to Wells Fargo Bank as a Defense to Bank Fraud.[5]  In that docket next order, Judge Nuffer held that "[m]onetary loss to bank is not relevant to charges alleging fraud in seeking to continue

---

[4] Docket no. 1006 at 16.

[5] *See* docket no. 795.

to use bank processing services under new shell companies because the bank had barred Defendants from doing business due to excessive chargebacks" and "[m]onetary loss to bank is irrelevant to the charged offenses and irrelevant to Defendants' intent."[6]

Upon review of the email exchange between Wells Fargo and counsel prior to the filing of this motion, it is apparent, however, that Mr. Leavitt's is seeking documents to support a defense that Wells Fargo has not incurred any monetary loss.  Specifically, Mr. Leavitt indicated that he was seeking documents demonstrating:  (1) that Wells Fargo agreed to "terms authorizing the set up of merchant accounts and also indemnification provisions"; (2) "how Wells Fargo drew on . . . reserve accounts, or was indemnified with money in those accounts"; (3) the "amount [Wells Fargo] received by way of an indemnification provision associated with accounts that [First Data, Inc.] and/or [CardFlex, Inc.] set up for iWorks and related entities"; (4) that to the extent "the government is alleging that [Wells Fargo] lost money associated with these accounts, [he is] looking for records of what that loss was (I.e., a fine? Imposed by whom?), whether that was an actual loss or rather a loss that was covered by reserves held by [Wells Fargo], [First Data, Inc.], or CardFlex, and whether there was any net loss as a result of accounts set up by iWorks or related entities."[7]

In an attempt to distance himself from these statements, Mr. Leavitt argues in his opposition that the "requested documents will show that Wells Fargo was not 'affected' by the alleged wire fraud" and that, "at best, the conduct complained of 'affected' a partially-owned

---

[6] Docket no. 944.

[7] Docket no. 963, Exhibit A at 17.

subsidiary" of Wells Fargo.[8]  However, whether Mr. Leavitt spins his subpoena as a demand for information about losses (as he did during the pre-motion meet and confer) or as a demand for information about how Wells Fargo was "affected" by the challenged conduct (as he does in his opposition), the conclusion remains the same:  he is seeking documents that are irrelevant and inadmissible.

Furthermore, the court agrees with Wells Fargo that the subpoena is facially overbroad, not limited to a reasonable time frame, and seeks information available from other sources.  It seeks "all" documents, records, communications, and agreements between Wells Fargo and 29 other individuals or entities during a two year period seven years ago.  The documents requested are likely available from other defendants, entities involved in the FTC case (to which Mr. Leavitt is a party), or the Government.

And, lastly, Mr. Leavitt is using the subpoena as a means to justify his own delay.  As he noted in his opposition, Mr. Leavitt was aware of "Wells Fargo's production of documents to the government's grand jury subpoena" on September 16, 2011.[9]  Just three months after this case was filed on June 15, 2011, Mr. Leavitt became aware of materials the Government had obtained as well as a potential third-party source of information.  But rather than seek that information from named parties or serve a subpoena upon Wells Fargo years ago, Mr. Leavitt chose to wait until the eve of trial to seek these documents.

---

[8] Docket no. 1006 at 18.

[9] Docket no. 1006 at 5-6.

However, Wells Fargo indicated that it was collecting and reviewing documents that would be responsive to the subpoena's requests and that it was willing to produce certain specifically identified materials.  To the extent that Wells Fargo has collected and reviewed non-privileged documents responsive to the subpoena, and that would be admissible as set forth above, Wells Fargo must produce those responsive documents that it has collected to date.  Wells Fargo should produce said documents on or before February 1, 2016.

Based on the foregoing, Wells Fargo's motion to quash is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 24th day of January, 2016.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

6